Cushing, J.
Plaintiff brought an action in the court of common pleas to restrain the defendant from causing or permitting noises, vibrations, gases and fumes from emanating from its factory.
She charged in her petition that in March, 1907, she purchased the property now occupied by helas'a residence, Lot No. 79 of Cleneay’s Subdivision; that at the time she purchased the prop *335 erty and erected her house there was a factory building on the north side of Lexington avenue between her property and Montgomery pike, the east end of which factory was within fifty feet of her residence, and that said factory had been in that location for a number of years prior to that date; that in the fall of 1918 defendant occupied said building and used it to make castings of various metals; that in the operation of its business it uses machinery which causes continual loud noises; that as a result her house vibrates, the windows are broken, and the plastering is loosened; that said vibrations have injured plaintiff’s property; that the gases and vapors penetrate said dwelling, thereby injuring the health, comfort and well-being of plaintiff and her family; and that the noises, vibrations, gases and fumes are a nuisance and injure her in her property rights, for which she has no adequate remedy at' law. She alleged that her house is situated in an exclusively residential neighborhood and that the factory in question is the only exception to the rule.
The defendant denied that the house is situated in an exclusively residential district, and denied specifically, and in detail, all the other allegations of the petition. It pleaded affirmatively that its factory is situated near the main line of the N. & W. railway, which was constructed long prior to 1907, and that that part of the city of Norwood is used as a business and manufacturing district of various kinds'; that the said railroad runs near the residence of plaintiff and operates many trains night and day; and that the trains cause noises, smoke, vibrations and inconveniences. Defendant *336 further pleaded that its business is lawful and is being conducted along the most modern and best-known methods, and asks that it go hence without day.
The facts developed by the record are that the plaintiff’s property is situated about two hundred feet north of the N. & W. railway company’s main track and that between this main track and plaintiff’s property there are four side tracks; that a short distance east and south of plaintiff’s property is a freight depot of the railroad company; that about two hundred feet west of her property is Montgomery pike, a wide thoroughfare, paved with granite, over which there is constant heavy traffic by trucks, wagons and automobiles, and that at least five lines of street cars pass the corner of Montgomery pike and Lexington avenue; that about twelve hundred feet west of this property is the C. L. & N. railroad and yards; that the C. L. & N. is a double-track railroad and at the point nearest the property of plaintiff there are six side tracks, one of them coming within between seven and eight hundred feet of plaintiff’s property; that within a radius of one thousand to twelve hundred feet there are at least thirty business and manufacturing plants, varying from a grocery to the large structural steel plant of Schreiber & Sons Co., and including the Ault & Wiborg Varnish Co. plant, and the Lewin Lumber Co. plant to the east.
Counsel for plaintiff urge that the section of the territory at and near the intersection of Montgomery road and the N. & W. railroad is not suitable for business or manufacturing purposes, that *337 it is exclusively a residential district, with the exception of this one factory.
The court below, in discussing the question of residential district, says that there is no other business plant located on the property between Lexington avenue and the road east of Montgomery road except the Palm Brothers Company plant several blocks away. The fact is that next north of this factory is a glue plant.
In argument, counsel for plaintiff below were asked what they considered a business district, in view of the fact that the railroad was located two hundred feet away. The answer was that if the factory was located on the south side of Lexington avenue, it would be within the business district.
The allegation of the petition that the district is exclusively residential was not sustained by the proof. This, no doubt, is one of those unfortunate cases that falls within the rule stated by Judge Davis in the opinion of the court in Eller v. Koehler, 68 Ohio St., 51, regarding one who becomes a resident of a trading or manufacturing neighborhood or .remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood. The surrounding territory, the location of the railroads, its accessibility by street cars, its. shipping facilities and the lay of the land all tend to the conclusion that the district here in question is and will more and more become a manufacturing and trading neighborhood. The rule applied by the court below as to neighborhood was too narrow. Neighborhood defined by Webster is “a district considered with reference to *338 a given characteristic.” This could not mean a limit of across a street or within a block. It means taking the territory within the locality of the railroad for an uncertain distance on either side. This is or is fast becoming a business section.
The plaintiff purchased this property and built her house in view of the existence of this factory and others in the neighborhood, and from the facts and circumstances developed in the case it is clear that the property in question is not situated in an exclusively residential district. It is on the border line, if not already within the march of business.
In view of this finding the question presented is as to whether or not the annoyances, discomforts and injuries are fairly incidental to the reasonable and proper conduct of such business in such neighborhood. Discomforts or injuries beyond that would be actionable.
From the record and the inspection of the plant, made at the request of counsel for both parties, it is certain that there are some annoyances created by its operation. There arises a light-colored vapor from the furnaces. How far this extends from the building is uncertain. Neither the appearance of the building itself, the fences, trees, grass nor residences within fifty to one hundred feet, or beyond, show any signs of a settlement from these furnaces. Whether the odors in the neighborhood come from this factory, the glue factory, the Ault & Wiborg building or one of the other numerous plants, cannot be determined either from the evidence or the inspection.
There arises from the operation of the plant a low, rumbling sound. This seems to be constant *339 while the factory is in operation. It cannot be observed when either a railroad train or a street car is passing, the noise from either being greater than it. This in a measure accounts for the absence of any witnesses in the case except those residing immediately around and close to the factory. The testimony as to the fumes, gases and noises emanating from the building is in direct conflict, except as to the low, rumbling sound. The rule in such cases is that the nuisances must be established by clear and convincing proof to authorize injunctive relief. Bell v. Pollak Steel Co., 19 N. P., N. S., 531; Rouse & Smith v. Martin & Flowers, 75 Ala., 510, and Goodall v. Crofton, 33 Ohio St., 271.
While we adhere to the rule stated in Edwards v. Allouez Mining Co., 38 Mich., 46, and followed in the unreported case of Martin v. Farrin Lumber Co., it seems but just that some effort at relief should be made by the construction of stacks to carry the smoke and fumes above the surrounding buildings, and that the reduction of the continued rumbling sound should be attempted.
The record further discloses that the character of the manufacture at this time is different from what it was when the action was brought and tried in the court below; that then the plant was making brass containers for navy shells; that it does not use as much zinc as it did at that time; and that it has put in dust arresters and installed non-crucible furnaces, a Berkshire pneumatic molding machine and gas governors and has thus reduced the low rumble appreciably from what it was at the time of the bringing of this action. It is claimed by counsel for the company that the installation of the gas *340 governor has so reduced the rumble that it cannot be said to cause substantial injury. This may be the fact, but it does not appear from the record.
The question of noise and the nuisance arising therefrom should always be considered in connection with the locality, the nature of the trade, the use of the property producing it, the time during which it exists, and its intensity and effect. 2 Wood on Nuisances (3 ed.), Sections 638, 639.
There appears to us but one important factor to be considered in this connection and that is the duration of its existence. It exists during the time the factory is in operation, and, while it is not intense, it's duration is such that in order to obviate the effect the intensity should be reduced.
In the case of Bliss v. Anaconda Copper Mining Co., 167 Fed. Rep., 342, the court held that where it was established that injury had resulted to farms in the valley within the smoke zone, but that it had been lessened in extent by reconstruction of the plant so as not to render the farming unprofitable, an injunction restraining the operation of the smelter would not be granted, but that if an equitable adjustment of the rights of the parties could be made the case would be retained for that purpose. This case is cited for the purpose of showing the court’s power to refuse an injunction and retain the case for the purpose of lessening, if can be, the noise and fumes incident to the operation of the factory.
The conclusion is that the location of plaintiff’s house is not in an exclusively residential section; that it is in or on the line of demarcation between a business and manufacturing district and a resi *341 dential section; that- some annoyance is caused from the operation of the factory; and that while the factory is equipped and operated with the most approved appliances known to the trade the inconvenience caused by its operation should be reduced to the minimum; that an injunction will be refused and the case retained and the company given a reasonable time within which to arrange its factory and business so as to reduce the inconvenience to the neighborhood caused by its operation. Our present inclination is that eight to ten months would be a reasonable time within which to experiment.

Decree accordingly.

Shohl, P. J., and Hamilton, J., concur.