**CLEVELAND (City), Plaintiffs-Appellants, v. AMALGAMATED ASSOC. of ST. ELEC. RY. EMPLOYEES, DIV. 268 et al, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21051. Decided January 31, 1949.

Robert J. Shoup, Robert Mooney, Cleveland, for plaintiffs-appellant.

Dan W. Duffy, Bernard Friedman, Cleveland, for defendants-appellees.

## OPINION

By HURD, PJ.

This action in equity for injunction and equitable relief here appealed on questions of law only, originated in the court of common pleas of Cuyahoga County wherein judgment was rendered for defendants upon the pleadings and the opening statement of counsel, on the ground that plaintiff had a full, complete and adequate remedy at law.

This case involves the authority and jurisdiction of the City of Cleveland in the management, supervision and control of the Transit System owned and operated by it under the provisions of the Charter of the city and the ordinances and resolutions of council adopted in pursuance thereof.

The sole question presented for our determination on this appeal is whether or not the petition on its face, together with the opening statement of counsel, set forth facts sufficient to constitute a cause of action in equity for injunctive relief.

For convenience and brevity the parties will hereinafter be designated as plaintiff and defendants, as they appeared in the trial court.

The plaintiff, in its capacity as a Municipal Corporation, through the duly qualified and acting members of the Transit Board of the City of Cleveland, created and appointed to supervise, manage and control the city's transportation facilities, owned and operated by it, filed its petition on February 12, 1948, against the defendants, Division 268 of the Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, and certain of its officers, including Thomas P. Meaney individually and as president, and business agent of said Local 268, and Harry C. Lang, individually and as financial secretary and treasurer of said Local 268, praying in part that they be enjoined from:

"interfering in any manner whatsoever with the plaintiff's officers, supervisors, agents, employees and representatives in the operation of plaintiff's car lines; and from interfering by force, intimidation or threats, in any manner whatsoever, with those of plaintiff's employees carrying out the orders and regulations of plaintiff's supervisors, officers and agents;

From protecting, aiding or abetting or assisting any one in the commission of said acts;

From intimidating, coercing or unlawfully influencing plaintiff's employees from remaining in or from assuming their required public employment and from inducing, coercing or intimidating plaintiff's employees to stop their work or to

abstain in whole or in part from the full, faithful and proper performance of their duties;

From interfering with the egress from plaintiff's car houses of any of plaintiff's cars."

The petition alleges, among other things, the corporate capacity of plaintiff, describes the defendant, Local 268 as a non-incorporated labor association and the positions of officers of said association, and sets forth the provisions of the Charter of the City of Cleveland, empowering the City through its Transit Board to provide for the supervision, management and control of its transportation facilities both within and without the city limits of the City of Cleveland, including the operation, maintenance and construction of the system, a determination of the routes, types of rolling stock and equipment, the time schedules and stops, the operation of cars, busses and other equipment and the fixing of salaries or compensation of its employees.

The petition further avers that under the provisions of the laws of this State, it, as a municipal corporation, is not empowered to enter into a binding contract with a labor union; that said Local 268 has in its memberships a considerable number of the employees of plaintiff; that its representatives on occasion negotiate with the officers of the Transit System relative to wages, hours and working conditions; that in order to promote a workable understanding on plaintiff's property, the Board adopted on Jan. 10, 1946, its Resolution No. 57-46 which Resolution sets forth the working conditions under which its employees shall work; that said Local 268 in indicating its willingness to accept and abide by said working conditions adopted its own Resolution in exact conformity to said Board's Resolution No. 57-46; that both of said Resolutions contain a provision as follows:

"Management, supervision and control of the Cleveland Transit System, including among other things the right to direct the working forces, the type of vehicle, the routes, the schedule of service, the maintenance or discipline and efficiency, the hiring, transferring and promotion or demotion of employees, the minimum qualifications of any position or classification and any other right, duties and privileges which, by ordinance or resolution of the council of the City of Cleveland or by law or by the charter of the City of Cleveland are reposed in the Transit Board, subject to such limitations thereon as are lawfully set forth elsewhere in these conditions * * *."

The plaintiff avers further in its petition that said resolution adopted by the respective parties contains a provision that neither the employees nor their representatives shall call, sanction, assist or engage in any strike, slow down or stoppage of work, operation or service of the Cleveland Transit System, or in any manner sanction, assist or engage in any restrictions or limitation of the work, operations or service of the system; that said resolutions also contain a provision that any dispute, claim, grievance or difference between plaintiff and its employees shall be submitted in accordance with the procedure therein set forth to an impartial umpire designated bv the parties.

The plaintiff further avers that among the vehicles which it operates on its system, are street cars commonly known as "100 Type." That when plaintiff attempted to operate some of said cars by one man on its Kinsman Avenue line, defendants ordered and instructed its members not to operate said cars and made certain threats to enforce such instructions; that in order to avoid a work stoppage on the system this plaintiff submitted said alleged dispute to said impartial umpire who upheld the contention of plaintiff that the Constitution of Ohio, the Charter and the "Working Conditions" reposed in the Board the full and plenary power to determine the types of vehicles to be operated and to direct the working forces on plaintiff's transportation system.

Plaintiff further avers that by virtue of the charter of the City of Cleveland it does have full power and authority to determine the types of vehicles to be operated on the city's transportation system, and that it is not authorized nor permitted by law to share its responsibility relative to the types of vehicles it operates nor to delegate that authority.

Plaintiff further avers that for some time it has been operating on the St. Clair and Superior Avenue lines a type of vehicle known as a PCC car; that it has been necessary to remove certain of those cars from said lines for necessary repairs; that in order to provide adequate public transportation on said lines plaintiff has transferred to said lines certain of its "100 Type" cars; that the employees of plaintiff working out of the St. Clair Avenue barns operated the said "100 Type" cars in conformity with the instructions of their supervisors; that after said cars were in operation, the defendants, Thomas P. Meaney and Harry C. Lang, acting in concert and in pursuance of their capacities as officers of Local 268 and in pursuance of their capacities as representatives of the employees, conspired together and are now acting in concert with each other in intimidating, coercing and un-

lawfully influencing plaintiff's employees from operating said one-man cars and that they are now acting in concert to affect a stoppage of work of said employees and that they have procured and induced the employees at the St. Clair Avenue house to abstain from the prescribed work.

Plaintiff further avers that at or about 5 A. M. on February 10, 1948, defendants Meaney and Lang, acting in concert as aforesaid, appeared at plaintiff's St. Clair Avenue car house and instructed and otherwise ordered plaintiff's employees to refuse to operate said "100 Type" cars, unless there were two employees on said cars; that on or about 1:00 P. M. on the afternoon of February 10, 1948, the said defendants acting in concert and in pursuance of their capacities as representatives of said employees, ordered and instructed plaintiff's employees to refuse to operate said cars unless there be two employees on said cars; that said action was repeated on the morning of February 11, 1948.

Plaintiff further avers that by the conduct and action on the part of said defendants, and as a result of the conspiracy of said defendants, plaintiff has been and is being prevented from conducting its transportation facilities in an efficient manner and in the manner prescribed by the charter of the City of Cleveland and that a continuance of the acts of the defendants will result in irreparable injury and loss to plaintiff and that plaintiff has no adequate remedy at law.

The opening statement of counsel for plaintiff, in addition to incorporating the petition as part thereof, reads in part as follows:

"Now our facts will show that on January 31, when the first of the 100-Type cars were assigned to that station, the men took them out and they ran them on the line; that intermittently thereafter until February 10, there wasn't a single opposition or adverse position on the part of any of the men that operated the cars. They conformed with their public employment; they obeyed their instructors and they took the cars out as at the present time I have designated and operated them. That on February 10, Mr. Meaney and Mr. Lang walked out to the car house and as the men again were taking the cars out, as they had done for the preceding approximately two weeks, Mr. Meaney, our evidence will show, walked before each car as the car was coming from the car yard into the street and stood in the tracks just like this (indicating) and held his hand out. And we have positive evidence of this pictorially. He held his hand up in front of the car and cer-

tainly the man wasn't going to run over Mr. Meaney and he had to stop his car and then Mr. Meaney walked around and he told him to get out."

The trial court in granting the motion of defendants for judgment upon the opening statement and the pleadings, stated that in his opinion the plaintiff had a full, complete and adequate remedy at law under the provisions of the Ferguson Act and also under criminal statutes, because in his opinion the conduct of defendants as described constituted a violation of the law.

We shall consider first whether or not the Ferguson Act so-called, commonly referred to as the Public Employees Anti-strike Law, §§17-7 to. 17-12 GC, affords the plaintiff an adequate remedy at law. The gist of the Act is contained in §17-8 GC entitled "Strike by Public Employees Prohibited" and is as follows:

"No person holding a position by appointment or employment in the government of the State of Ohio, or in the government of the several cities, villages, counties or townships thereof or any other political subdivision of the State, or of a municipality, or in the public school service, or in any public or special district, or in the service of any authority, commission or board, or in any other branch of the public service hereinafter called a 'public employee' shall strike."

Other sections of the Act define what is meant by "strike" and provide for penalty and reinstatement. Inasmuch as the petition clearly indicates on its face that the defendants are not employees of the plaintiff, this section of the General Code in our opinion has no application to the allegations of the petition.

It was expressly set forth in the opening statement of counsel that the employees commenced to operate the so-called one-man cars on January 31st and continued to do so until February 10th and 11th when the defendants Meaney and Lang interfered and prevented their operation. It is likewise set forth in the petition that employees who were assigned to operate said cars attempted to carry out the instructions of plaintiff's supervisors but were forcibly prevented from doing so by defendants Meaney and Lang.

For the purpose of ruling upon the motion, it was the duty of the trial court to accept as true the well pleaded allegations of the petition, and the opening statement of counsel. Whether such allegations could later be sustained by a suffi-

cient degree of proof on the trial of the case is another ques-
tion entirely.

From the allegations of the petition and the opening state-
ment of counsel it appears that the defendants Meaney and
Lang are not employees of the City of Cleveland but are officers
of Local 268 and in the conduct complained of were engaged
in their work as such officers and members of the Local.
Therefore the defendants cannot qualify as public employees
of the City of Cleveland, and inasmuch as the complaint
in the petition is directed toward the conduct of these de-
fendants individually and as officers of Local 268, it can-
not be successfully maintained that they are public employees
within the meaning of the Act under the allegations of the
petition and the opening statement of counsel. Consequently
we conclude that it was error, prejudicial to the rights of
the plaintiff when the trial court held that the provisions of
§§17-7 to 17-12 GC afforded a full, adequate and complete
remedy at law.

We shall consider next whether or not the plaintiffs are
afforded an adequate remedy at law under the provisions
of the criminal statutes of the state of Ohio or the Ordi-
nances of the City of Cleveland.

Apparently the theory of the trial judge was that by causing
the defendants to be arrested for trespass or some similar
offense the plaintiff would be afforded an adequate legal
remedy. We cannot agree with this view.

It must be remembered that according to the allegations
of the petition the defendants were not in the same position
as an ordinary person who trespasses upon the property of
another. The defendants as the highest ranking officers of
Local 268 represent the employees of the plaintiff who are
members of the Local and have certain jurisdiction over them
as members of the Union. In their position as officers they
are clothed with much greater power and authority than the
average individual who bears no official relationship to these
employees.

It is reasonable to assume that when the officers of the
Union give directions to the members of the Union that these
member-employees will have a much greater respect for and
will feel a much greater obligation to conform to the directions
of such officers. Hence their relationship is not properly com-
parable to that of trespassers who would be strangers to them.

There would be no assurance that the arrest of one or two
officers and their prosecution under criminal law would afford
a remedy for the act concerning which complaint is made.
The allegations of the petition and the statements of counsel

present the typical situation where courts of equity are called upon to exercise jurisdiction by granting equitable relief and the fact that the matter charged is also a violation of law does not prevent a court of equity from exercising its jurisdiction in such cases.

An examination of authorities discloses that where an act is a violation of criminal law the court will not for that reason refuse injunctive relief when the act also constitutes an interference with the interests of the public or violates property rights.

The courts have, however, passed upon this proposition many times. The authorities cited in the brief of plaintiff appellant are in point some of which are as follows:

**Renner Brewing Co. v. Rolland, 96 Oh St 432.**

"Where the averments of a petition would, if proven, entitle the plaintiff to an injunction, a writ will not be refused merely because the acts sought to be enjoined are punishable under the criminal statutes of the state." 30 C. J. S. Equity, Sec. 53:

"It is well settled, however, that if plaintiff makes out a case where equity would otherwise interfere, aid will not be withheld because the act complained of is a crime as well. 43 C. J. S. Injunctions, Section 61:

"Criminal trespass. The fact that a trespass to real property may also constitute a crime does not affect the power of the court to grant an 'injunction."

See also: High on Injunctions (4th Ed) Sec. 20-a 40 A. L. R. 1145.

Another proposition not discussed in the briefs or argument appears in the record before us. It should be noted that according to the allegations of the petition and the opening statement of counsel, which is all that is before us, the parties had by agreement submitted their dispute to an impartial umpire and it was only after an adverse decision by the umpire that direct action complained of was taken by defendants. Failure to abide by the decision of the umpire or to appeal to the courts certainly gave rise to a right of action in equity by the plaintiff.

Furthermore, lest there be any misunderstanding, we emphasize that the right of employees, either public or private, to strike for redress of grievance is not involved in this case, either under the so-called Ferguson Act or otherwise.

We think it unnecessary to pursue this subject at any further length. It is our conclusion that the petition and opening statement of counsel set forth facts sufficient to constitute a cause of action in equity and that the trial court committed error prejudicial to the rights of plaintiff in granting the motion for judgment on the pleadings and opening statement and in dismissing the petition at defendant's costs.

For the reasons stated the judgment of the court of common pleas is reversed and the cause is remanded for further proceedings according to law. Exc. Order See Journal.

MORGAN, J, SKEEL, J, concur.