## THE OHIO STOCK FOOD CO. *v.* GINTLING.

*Nuisances—Pollution of air and water by operating hog farm
—Corporation liable notwithstanding garbage disposal con-
tract with municipality—Proof of negligence unnecessary
to establish liability for nuisance—Owner of homestead
entitled to damages for annoyances and inconveniences—
Proof of damages to dwelling or improvements unneces-
sary—Charge to jury—Conflicts between special requests
and general charge—Complaining party not entitled to
new trial unless conflict prejudicial.*

1. A private corporation, organized for profit, which operates
   a hog farm in such a manner as to pollute the air and a
   living stream of water, to the injury of an adjacent pro-
   prietor, is liable in damages to such proprietor, notwith-
   standing such corporation has a contract with a munici-
   pality to receive its garbage and disposes of the same
   upon its farm.
2. Proof of negligence in operation of hog farm is not neces-
   sary to establish cause of action for nuisance caused
   thereby.
3. The owner of a homestead is entitled to damages for
   annoyances and inconveniences suffered by him which
   have been occasioned by a nuisance, though he shows
   no damage to the dwelling house or improvements upon
   said property.
4. When there is a conflict between special requests before
   argument and the general charge, such conflict must be
   prejudicial to the complaining party in order to entitle
   him to a new trial.

(Decided  April  5,  1926.)

ERROR:  Court of Appeals for Summit county.

*Mr. W. J. Laub, Mr. H. M. Hagelbarger,* director
of law, and *Mr. W. A. Kelly,* for plaintiff in error.
*Messrs. Grant, Thomas & Buckingham,* for de
fendant in error.

PARDEE, P. J. The parties stand in this court in the reverse order of that held in the court below, but in this opinion, for convenience, they will be referred to as plaintiff and defendant, as they stood in that court.

The plaintiff, for her cause of action against the defendant, alleged that for seven years before the commencement of the action she had been the owner of 60 acres of farm land in Green township, in said county, upon which were located a dwelling house, barn, and outbuildings. The plaintiff further alleged that the defendant, an Ohio corporation, had been for four years prior to the filing of the petition the owner of a farm in said township, consisting of 212 acres, which lay in a southeasterly direction from the plaintiff's farm and approximately one mile therefrom, and that it had erected thereon barns, feeding platforms, watering troughs, and other appurtenances for the purpose of making a daily disposition of many tons of garbage, and of feeding the same to hogs upon said farm; the hogs varying in number from 2,500 to 4,000 per day.

Plaintiff further alleged that there was a living stream of water, which had its source in a southeasterly direction from plaintiff's land, and which flowed westerly through the said defendant's property along its southern boundary and passed through plaintiff's farm. This stream of water was of varying width and depth, and eventually found its way into an artificial body of water known as the East reservoir. The plaintiff further alleged that during the time hereinbefore mentioned, defendant negligently and willfully, and in

disregard of the rights of the plaintiff, so operated its hog farm that the liquids and filth and putrid refuse from said hog farm drained into said stream of water, polluting the same and making it unfit for the ordinary farm uses of plaintiff, and causing to arise from said defendant's farm noxious, unhealthful, noisome, and offensive odors, which reached and enveloped the plaintiff's said farm.

The plaintiff further alleged that, as a direct and proximate result of the negligent and willful and wanton acts of defendant, she had suffered damages, for which she asked judgment.

The defendant, in its answer, admitted that it was a corporation organized under the laws of the state of Ohio; that it was the owner of the 212-acre farm described in the petition; that it had constructed and maintained said sheds, buildings, and feeding platforms; that it was disposing of garbage upon the premises by feeding the same to hogs; and that there was a natural stream of water flowing past its said premises and through the plaintiff's, but denied the other allegations of plaintiff's petition.

The case was submitted to a jury upon the pleadings and the evidence, and a verdict was returned for the plaintiff. A motion for a new trial was filed by the defendant, which was overruled. Judgment was entered upon the verdict, and the case is now here on error to reverse that judgment.

The defendant complains of four errors, to wit: First, that the plaintiff did not state a cause of action in her petition; second, that the court should have directed a verdict for defendant at the close of plaintiff's case; third, that the verdict was con-

trary to the weight of the evidence; and, fourth, that the court erred in its charge to the jury.

As to the first alleged error: The plaintiff, in her petition, alleged that the defendant, by the operation of its hog farm, (a) had polluted and made unfit for use the natural stream of water which flowed through her farm, and (b) had contaminated the atmosphere over and above plaintiff's farm by noxious, unhealthful, noisome, and offensive odors. It will thus be seen that the plaintiff alleged that the defendant had polluted the water flowing on and the air over the plaintiff's farm.

It is an elementary principle of law that an upper proprietor of land abutting upon a natural stream of water cannot by artificial means pollute such stream to the injury of a lower riparian owner, without being liable in damages therefor, and it does not make any difference whether the pollution is made directly by the state, by a subordinate municipal body, or by a private corporation under a contract made with such municipality.

In the case of *City of Mansfield* v. *Balliett*, 65 Ohio St., 451, 63 N. E., 86, 58 L. R. A., 628, the first two paragraphs of the syllabus read as follows:

"1. Riparian rights are property within the purview of Section 19 of the Bill of Rights, of which the owner cannot be deprived without just compensation, though taken for, or subjected to, a public use.

"2. Any actual and material interference with such rights, which causes special and substantial injury to the owner, is a taking of his property."

And in the opinion, the court, on pages 465, 466 (63 N. E., 90), says: "In Mills on Eminent Domain, where the same doctrine is maintained, it is said, Section 79, that: 'Riparian rights are property. Of this property the owner cannot be deprived without just compensation, nor can the state itself exercise such a power of deprivation, or confer it upon some subordinate municipality, without making compensation for the property taken.' And in Section 182 of the same work, it is laid down as settled law, that: 'The legislative authority to do an act resulting in damages to the property of an individual cannot be sustained, without the payment of damages, on the simple claim that the legislature cannot authorize that which is improper. It is beyond the power of the legislature to authorize the infliction of an injury without compensation. Charters should not be construed as evincing any legislative intention to authorize an injury, or to shield the corporation from a common-law action, in case compensation is not provided.' "

See, also, *Bohan* v. *Gas-Light Co.* and *Rosenheimer* v. *Gaslight Co., infra.*

We are therefore satisfied that the plaintiff does allege a complete cause of action against the defendant, which if established by a preponderance of competent evidence, entitles her to a verdict and judgment against the defendant.

As to the second alleged error: The plaintiff in her evidence in chief, as disclosed by the bill of exceptions, offered some evidence to sustain every material allegation of her petition, so when the defendant made its motion to direct a verdict

in its favor at the conclusion of plaintiff's case it thereby admitted, for the purpose of the motion, all of these facts to have been conclusively proved, and if the court had directed a verdict for the defendant at that time it would have usurped the functions of the jury and committed an error prejudicial to the plaintiff.

In the case of *Ellis & Morton* v. *Ohio Life Ins. & Trust Co.,* 4 Ohio St., 628, 64 Am. Dec., 610, the syllabus reads, in part, as follows:

"The courts of this state, in a proper case, have the power to take the evidence given by the plaintiff from the jury, and order a peremptory nonsuit.

"Such a motion involves an admission of all the facts, which the evidence in any degree *tends* to prove, and presents only a question of law, whether each fact, indispensable to the right of action, and put in issue by the pleadings, has been supported by some evidence.

"If it has, the motion must be denied, as no finding of facts by the court, or weighing of the evidence, is permitted."

And in the opinion, on page 646, the court says: "The motion involves not only an admission of the truth of the evidence, but the existence of all the facts which the evidence conduces to prove. It thus concedes to the plaintiff everything that the jury could possibly find in his favor, and leaves nothing but the question whether, as a matter of law, each fact indispensable to the right of action has been supported by some evidence? If it has, no matter how slight it may have been, the motion must be denied; because it is the right of the party to have the weight and sufficiency of his

evidence passed upon by the jury—a right of which he cannot be deprived, and involving an exercise of power for which, without his consent, the court is incompetent. But where he has given *no* evidence to establish a fact, without which the law does not permit a recovery, he has nothing to submit to the jury; and the determination of the court that the fact constitutes an essential element in the right of action necessarily ends the case.''

This rule has been consistently followed by all of the courts of this state and has been reaffirmed by the Supreme Court in many subsequently reported cases.

The third complaint is that the verdict of the jury is manifestly against the weight of the evidence.

The jury having found in favor of the plaintiff, it must necessarily have found that the acts complained of, or some of them, had occurred during the four-year period covered by the petition. From our examination of the record, we are satisfied the jury was justified in finding that plaintiff had suffered some damages from the wrongful conduct of the defendant. This being so, the plaintiff was entitled to compensation for the injuries sustained.

At the time the plaintiff filed her petition she sought to recover damages in an amount equal to what she claimed her farm had been depreciated in value by the wrongful acts of the defendant, but, upon the trial, at the suggestion of the defendant, the trial court refused to permit her to show her damages in that way—upon the assumption, we presume, that the nuisance about which com-

plaint was made was temporary in character and not permanent.

The evidence shows that the plaintiff occupied her farm for approximately two years after the defendant established its hog farm, and for the remainder of the time covered by her petition she rented her farm to tenants. The plaintiff offered evidence tending to establish the things she had been required to do while she remained in possession of and upon the farm to procure water for her usual farm purposes, and she also offered evidence tending to prove the inconvenience and annoyance she suffered while she occupied her farm. She also offered the evidence of witnesses to show the yearly rental value of the farm, both before and after the alleged wrongful acts of the defendant.

The jury returned a verdict for the plaintiff in the sum of $1,000, and the defendant claims that this is excessive and manifestly against the weight of the evidence, as the maximum amount of rent, as shown by the evidence, that could be recovered by the plaintiff for the time laid in the petition, is $600.

As before stated, the evidence shows that during the time plaintiff occupied her farm as a homestead she suffered annoyances and inconveniences as a result of the wrongful operation of the defendant's farm. It is, of course, true that she did not offer any evidence of any pecuniary loss which she suffered during such time; but how could she? Is she therefore to be without compensation for her injuries? Is a person injured in an accident to be deprived of compensation for

the pain and suffering endured because he cannot offer evidence of what the pain and suffering were worth from a pecuniary standpoint? The law is too humane to adopt such a rule, and has therefore established the principle that one injured may recover for pain and suffering without evidence of its pecuniary value, and it has also established the rule that for injuries to one's homestead, caused by a nuisance, the owner of such homestead may recover for such injuries without evidence of pecuniary value.

In the case of *Judson* v. *Los Angeles Suburban Gas Co.*, 157 Cal., 168, 106 P., 581, 26 L. R. A., (N. S.), 183, 21 Ann. Cas., 1247, the sixth paragraph of the syllabus reads as follows:

"6. A gas factory may constitute a nuisance as to a dwelling owing to noise and smoke, though no damage to the dwelling house or herbage on his land results nor to the rental or saleable value of the property."

And again on page 172 of 157 Cal., (106 P., 583), the court in its opinion said:

"The fact that respondent proved no damage to the dwelling house or herbage on his land, nor to the rental or vendible value of the property, does not prevent the court from awarding damages. In the very nature of things the amount of detriment sustained is not susceptible of exact pecuniary computation. It is for the court to say what sum of money the plaintiff should receive in view of the discomfort or annoyance to which he has been subjected."

We are therefore unanimously of the opinion that the verdict of the jury as to liability and

amount is not manifestly against the weight of the evidence.

As to the fourth alleged error: The plaintiff complains of instructions Nos. 2 and 4, given by the court before argument at the request of the plaintiff, which read as follows:

II. "If you find, from the evidence, that the defendant at the time or times mentioned in this petition, has, by the operation of its hog farm and of its business, occasioned noxious exhalations, noisome or offensive smells, which became injurious to the health or the comfort or to the property of the plaintiff, then I say to you that the operation of its farm in that manner is negligent and unlawful, and entitles the plaintiff to a verdict, at your hands, for any damage proximately resulting from such negligence and measured by the rule that I shall later give you."

IV. "It is the duty of the defendant to so operate its business as not to corrupt or render unwholesome or impure a water course or stream of water. So if you find that a stream of water or water course going through or over or upon the land of this plaintiff has been corrupted or rendered unwholesome or impure through the operation by the defendant of its business, then I say to you that the defendant, in the operation of its business, has been negligent, and has conducted its business unlawfully. And if you also find that, as a proximate result of such negligence and unlawful conduct, the plaintiff has been substantially damaged in any of the respects alleged in her petition, then it will be your duty to return a verdict in her favor."

The court also gave, before argument, defendant's request No. 1, to wit: I. "The disposal of garbage from a municipality by the operation of a hog farm or piggery is a lawful business and not a nuisance *per se.*"

The defendant claims that its acts in the operation of its farm were authorized by law, inasmuch as it had a contract with the city of Akron to dispose of its garbage, which was hauled to the farm by the employes of the city, and there taken by the defendant and fed to its hogs and otherwise disposed of by it upon said farm.

In its answer the defendant did not set up as a defense this contract, nor was the same offered in evidence, but the parties were satisfied with a stipulation with regard to the contract, which stipulation, found on page 179 of the bill of exceptions, reads:

"The Court: It is agreed by and between the parties that, during all of the time involved in this lawsuit, a contract existed between the city of Akron and the defendant by which the city of Akron was to deliver out on the farm of the defendant its garbage, and the defendant was to receive it there, and feed it to hogs, and that a bond was given by this defendant to the city of Akron for the faithful performance of that contract, and that was approved by the city council—the contract was approved by the city council."

Neither did the defendant, in its answer or in its evidence, claim that the hog farm was operated with such care and skill and in such manner as to produce the least possible annoyance to the public.

Having these facts in mind, what does the record show?

In plaintiff's request No. 2, *supra,* the court charged the jury that if the defendant so operated its farm that it gave off noxious odors which became injurious to the health and comfort, or property, of the plaintiff, then such operation was negligent and unlawful, and the plaintiff was entitled to recover for any damages which proximately resulted from such operation. Plaintiff's request No. 4, *supra,* was substantially the same, but applied to the stream of water flowing through plaintiff's land.

The defendant claims that these requests are in conflict with its request No. 1, *supra*; but we fail to perceive any conflict, as said request seems to us to be in perfect harmony with requests Nos. 2 and 4, as, of course, the operation of a hog farm or piggery located without the limits of a municipal corporation is a lawful business and not a nuisance *per se,* and becomes a nuisance only when it is operated in such a manner as to annoy and injure private persons or property. The plaintiff, as we understand her claim, does not base it upon the establishment of said hog farm and piggery, but solely upon the wrongful operation of the same and the consequent damages to her and her property.

It is true that the plaintiff in her petition alleged that the defendant was negligent in the operation of its farm, and that as a result of such negligence and defendant's willful and wanton acts she suffered the damages alleged; and it is also true that plaintiff's requests Nos. 2 and 4, *supra,* seem to

be based upon the same theory of negligence, and were probably founded upon a claimed violation of Section 12646, General Code, and the consequent assumption that the defendant had therefore been guilty of negligence *per se* in the operation of its farm.

The court, in its general charge, took the view that if the defendant did commit the acts alleged it would be liable whether it was guilty of negligence or not, as appears from the following parts of its charge, to wit:

"Now, first, as to the odors, if the defendant so operated this farm as to occasion noxious and noisome and offensive smells, and those smells were transmitted through the air to the plaintiff's premises, and injured, hurt, or inconvenienced the plaintiff, then the plaintiff is entitled to recover.

"Now, as to the pollution of the stream, very largely the same rule applies. If the defendant has polluted this stream, and the plaintiff has thereby suffered damages, she is entitled to recover."

But the defendant claims that as a result of the decision of the Supreme Court in the case of *Toledo Disposal Co.* v. *State,* 89 Ohio St., 230, 106 N. E., 6, L. R. A., 1915B, 1207, the defendant could not be liable, because it was operating its hog farm under a contract made with the city of Akron, under authority of Section 3809, General Code.

But with this contention we do not agree. The agreement in the instant case is not set out in full in the bill of exceptions, it is not claimed or proved that the hog farm was conducted under municipal

contract and regulation, and the evidence does not show that the same was conducted with care and skill and in such manner as to produce the least possible annoyance.

The case of *Toledo Disposal Co.* v. *State, supra,* was a criminal prosecution, in the name of the state, to abate a public nuisance, and the instant case is one brought to recover damages for a private nuisance, and the court in its opinion in that case recognized this difference, for on page 237 of 89 Ohio St., (106 N. E., 8), it said:

"The proposition stated does not involve the conclusion that a person injured specially and in a different way than the public would not be entitled to recover damages in a civil suit, if the work is done in an improper manner or so as to cause unnecessary disturbance or discomfort to such person."

In a leading case (*Bohan* v. *Port Jervis Gas-Light Co.,* 122 N. Y., 18, 25 N. E., 246, 9 L. R. A., 711), decided by the Court of Appeals of the state of New York in the year 1890, it was held:

"1. In an action against a gas company for maintaining a nuisance by creating noxious odors, the existence of the nuisance establishes the cause of action, and it is not necessary to prove negligence on the part of the company in the selection of its machinery or in its methods of manufacture.

"2. Smells and odors that contaminate and pollute the air so as to substantially render the adjacent property unfit for comfortable enjoyment constitute a nuisance, and it is not necessary to a right of action that the adjacent owner be actually driven from his dwelling.

"3. A gas company is not exempted from liability for maintaining a nuisance by creating noxious odors in its manufacture of gas because it is incorporated under the laws of the state, * * * when they do not confer upon corporations organized under them the power of eminent domain. Such a company cannot locate its works where it will, and it rests under the same obligation as any other citizen to so use its manufacturing property as not to create a nuisance."

And in *Rosenheimer* v. *Standard Gaslight Co.,* 36 App. Div., 1, 55 N. Y. S., 192, one of the appellate divisions of the Supreme Court announced the same doctrine, to wit:

"1. The ineffectual exercise of care to prevent or reduce the effect of a nuisance does not affect defendant's liability therefor.

"2. That a corporation is authorized by charter to manufacture gas does not authorize it to commit a nuisance in its manufacture, though such business cannot be otherwise conducted."

We are therefore of the opinion that Section 3809 of the General Code does not apply to the facts established in this case, and, if it did, it would not exempt the defendant from liability for any injuries which the plaintiff sustained, and the court was justified in stating, in its general charge, as hereinbefore quoted, the rules of law applicable to the liability of the defendant upon the facts as shown in this case.

So, does the conflict in the general charge with plaintiff's requests Nos. 2 and 4, *supra,* prejudice the defendant?

We do not think so.

The plaintiff was entitled, as a matter of law, to the rules of liability stated in the general charge, which are broader than the rules stated in the special requests; so, if the jury followed the rules stated in the general charge, it could not hurt the defendant, and, if the jury followed the rules stated in the special requests, it would be beneficial to the defendant and prejudicial to the plaintiff; but in either event the defendant could not be hurt or prejudiced, inasmuch as the special requests limited the right of the plaintiff to recover upon the theory of negligence, whereas negligence in the operation of defendant's farm was not the basis of plaintiff's right to recover.

Having carefully reviewed the bill of exceptions, and investigated the law applicable to the facts as shown by such bill, we are unanimously of the opinion that no errors intervened which prevented the defendant from having a fair and impartial trial, and that substantial justice has been done between the parties.

The judgment will therefore be affirmed.

*Judgment affirmed.*

WASHBURN and FUNK, JJ., concur.