[Civ. No. 15530.   First Dist., Div. Two.   Nov. 19, 1953.]

MARIE L. DARRACH, Appellant, v. TRUSTEES OF THE SAN FRANCISCO COUNTY MEDICAL ASSOCIATION (a Corporation) et al., Respondents.

Brobeck, Phleger & Harrison for Appellant.

Bronson, Bronson & McKinnon for Respondents.

NOURSE, P. J.—Plaintiff, a 78-year-old lady, brought a negligence action for serious injuries suffered in a fall on the outside steps of the building at 2180 Washington Street in San Francisco, owned by the San Francisco County Medical Association and occupied by its Irwin Memorial Blood Bank, for which plaintiff was a volunteer worker. The cause was tried before a jury. At the close of plaintiff's case a motion for nonsuit was made on the grounds that no evidence had been introduced tending to prove negligence of defendants or that said negligence was the proximate cause of the injury, and that the evidence showed as a matter of law contributory negligence of, and acceptance of the risk of the use of the premises by plaintiff. Plaintiff appeals from the judgment entered on the granting of said motion.

It is not disputed that plaintiff was as to defendants in the position of a business invitee. Plaintiff's evidence consisted solely of her testimony, a photograph of the steps on which the accident took place and the testimony of one other witness, transcribed only in part, which contains no more than that she testified that the steps were made of grey-white marble and that they were quite wide, at least 8 feet where plaintiff fell.

Plaintiff's testimony showed that the accident happened on October 18, 1950, at 5 o'clock p. m. when she left after having worked at the Blood Bank that afternoon. She had done volunteer work there one afternoon a week since the latter part of August of that year. Up to the time of the accident she had done so seven or eight times. She always left the building in the same way.

Her testimony together with the photograph in evidence shows that when leaving she first descended three or four steps to a large outer platform. On this she turned to the

right to a flight of nine steps ending in a landing from which six further steps led to the lowest level. The first flight had broad stone balustrades at both sides. She was accustomed to go down these steps at the right side supporting herself with her hand on the right hand balustrade until she came to the landing. This balustrade had newels (end posts) somewhat wider and higher than the balustrade itself, both at the upper platform and at the landing. The lower steps which she had to go down had a balustrade only at her left hand side. She was therefore accustomed to cross over on the landing and put her left hand on that balustrade to support her in going down these last steps. The broad balustrade had nothing of which she could take hold.

On the day of the accident she started to follow the same procedure. She first testified that in that manner she came down to the lower landing helping herself with her hand on the balustrade and that she fell when she was on the landing at a spot which she marked on the photograph. Thereafter she changed her testimony to the effect that the place marked was where she landed at the end of her fall. She marked the base of the right hand newel at the upper platform (at the top of the upper flight of steps) as the place from which she fell, and testified: "It began up there, right here, when I reached out to try to touch that balustrade . . ." She marked as the place for which she reached the beginning of the balustrade itself, not the newel next to which she was standing. She fell when she was reaching for that location. She could not reach it standing erect but had to bend over when she reached for the balustrade. "It was too low." Under cross-examination she further testified that she had known the building since the year 1911 when she visited it as the private dwelling of the Irwin family. The stairway looked exactly the same as it did then except that then it was, of course, much newer. On every prior occasion she had managed to get down to the sidewalk in safety. This time she fell when she reached to put her hand on the top of the balustrade. She did not think she made contact with it. "I just put my hand forward and then I fell." She did not remember where she was looking at the time. She was not conscious of missing a step or slipping. "No, I haven't any memory of that. I don't know how it happened. Q. You don't really know how it happened? A. No; the only thing I am conscious of is that reaching and the fall. Q. And then you simply fell? A. Yes, yes."

Appellant's main contention is that the above contains evidence of negligence of defendants and of causation of the damage by said negligence, substantial enough to go to the jury; that it shows negligence of defendants in not providing a functional handrail for the steps of the former private mansion now that it is used for a public purpose, and in leaving the old balustrade as an inadequate substitute for a handrail; that the proximate causation can be inferred from the fact that plaintiff fell when she bent in reaching for the balustrade because "it was too low." We do not agree.

■ The primary requisite of liability of a possessor of land for harm caused thereon to business invitees is the existence of a condition which he should realize as involving an unreasonable risk to them (2 Rest., Torts, § 343). The absence of a handrail at steps used by the public does not in itself indicate an unreasonable risk. Appellant does not cite any rule of law, and we do not know of any, which requires the outside steps of a building in public use always to be provided with a handrail. ■ To predicate negligence on the absence of a handrail the plaintiff has to show that the specific steps on which an accident took place constituted an unreasonable risk if not provided with a handrail. This appellant completely failed to do. There is no evidence whatever that the steps were steep, or slippery or worn or littered, or that they presented any other defect or quality which caused them to be dangerous for a normal visitor who walked them without gripping a handrail or using other hand support. If such qualities existed it was for plaintiff and her witness, who described the stairs, to bring them out in their testimony. They did not do so. To the contrary, appellant testified that she had managed the descent of the steps safely seven or eight times without complaining of any such dangerous condition. Neither does the photograph show anything of this kind. So far as can be seen on it the steps have wide treads and low risers and no visible signs of wear. There is nothing in the oral evidence to the contrary and no showing that the steps are not easily practicable.

■ Appellant contends that the jury could infer that the steps were worn and slippery from the fact that they consisted of marble and that the house was 40 years old as shown by the fact that plaintiff visited it in 1911. There was no evidence as to the kind or hardness of the marble, the degree of use by visitors, or the possible repair made to the

steps in the course of the years. Under these circumstances the jury could not be permitted to draw such an inference, certainly not where direct evidence of such conditions could easily have been produced if they had existed, and when plaintiff denied any knowledge of having slipped.

■ "No inference of negligence arises from the mere proof of a fall upon the stairway. 'In order to impose liability on the owner it must be shown that a dangerous condition existed, and that the defendant knew or should have known of it. ■ While under some circumstances, negligence may be inferred from the existence of a dangerous condition, the burden rests upon the plaintiff to show the existence of a dangerous condition, and that the defendant knew or should have known of it.' '' (*Harpke v. Lankershim Estates*, 103 Cal.App.2d 143, 145 [229 P.2d 103].) ■ Here there is over and above the fact of the mere fall, no other proof of a dangerous condition than that plaintiff fell in an unexplained manner, without slipping or missing a step, when standing on the upper platform next to the right hand newel and bending somewhat in reaching for the balustrade itself, it being too low to touch it standing erect. If there had been evidence that the steps were dangerous for a person descending them without holding a handrail or leaning on a balustrade, the question whether a dangerous condition was shown by the fact that the balustrade could not be touched easily from the upper platform because of the presence of the newel there, might possibly have been for the jury. But as there was no evidence whatever that any danger was involved in going down one or two steps without support, where plaintiff could without bending have touched the balustrade on which she was accustomed to support herself, and even no evidence that any support at all was necessary, there was nothing from which the jury could conclude that a dangerous condition existed. The absence of all proof on this essential point alone justifies the nonsuit.

In the cases on which appellant mainly relies there was evidence of special circumstances which indicated that the use of the stairs without hand support would be dangerous— in *Kidd v. Thomas Gilcrease Foundation*, 194 F.2d 129 that the stairway was dark and the treads narrow, in *Rau v. Redwood City Woman's Club*, 111 Cal.App.2d 546 [245 P.2d 12] that the stairs were worn and slippery, in *Gerard v. Wilson Holding Co.*, 79 Cal.App.2d 553 [180 P.2d 380] that a guardrail on the platform did not continue along the steps. Cases

in which a nonsuit of a plaintiff who fell on stairs was upheld, although there was somewhat more indication of a dangerous condition than in the case before us, are *Harpke* v. *Lankershim Estates, supra,* 103 Cal.App.2d 143, and *Marple* v. *Manspeaker,* 88 Cal.App. 682 [263 P. 1022].

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.