## FRED W. JESKE v. GEORGE R. WOLFF HOLDING COMPANY AND ANOTHER.

83 N. W. (2d) 729.

May 31, 1957—No. 37,084.

*Robert J. Munson,* for appellant.

*Richards, Janes, Hoke, Montgomery & Cobb* and *Greer E. Lockhart,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries sustained by plaintiff as the result of falling on the front concrete steps of the clubhouse owned and operated by George R. Wolff Holding Company and George R. Wolff Post No. 425, Veterans of Foreign Wars, in Hopkins. The accident occurred about 1 a. m. October 17, 1953. At the time, plaintiff was 74 years of age and in the employ of Glen Lake Sanitarium as a fireman.

As a result of the accident, plaintiff sustained rather serious injuries, and surgery was required and performed upon his skull to relieve pressure, with some resulting loss of memory. The jury returned a verdict in his favor in the sum of $2,500. The trial court thereafter granted defendants' motion for judgment in their favor notwithstanding the verdict, and plaintiff appeals from the judgment entered.

The basis of plaintiff's claim for negligence on the part of defendants proximately causing the accident is that defendants permitted an accumulation of leaves upon the steps which caused him to slip thereon; and failed to provide proper handrails for such steps. In a memorandum attached to its order setting aside the verdict, the trial court stated:

"In my opinion, the plaintiff's testimony is not sufficient to establish the fact that there was a dangerous condition existing where he slipped, created by an accumulation of leaves * * *. His testimony is so uncertain and conflicting that a finding based thereon would be a mere guess. * * *

\* \* \* \* \*

"* * * the plaintiff's testimony is discredited by its uncertainty and contradictions. Because it is the only evidence in his behalf relating to the presence, at the time that the plaintiff slipped, of leaves at the place

where he slipped, and also relating to what he stepped and slipped on, the issue of the negligence of the defendants predicated on the existence of a dangerous condition created by an accumulation of leaves and the issue of the causal connection between such negligence and the plaintiff's injuries are left to the realm of conjecture. I do not think that a verdict against the defendants based on proof of that character with respect to controlling facts should be permitted to stand. * * *

* * * * *

"It is undisputed that the defendants did not maintain a handrail on the stairs. * * *

"* * * Plaintiff failed to prove that the stairs * * * were defective or that they were constructed or maintained in a way which might be regarded as dangerous to persons using them. There was an absence of adequate proof that a dangerous condition existed on the stairs and that the defendant knew or should have known of it. It is clear that liability cannot be imposed on the defendants on account of the absence of a handrail on the stairs."

Plaintiff testified that he arrived at the clubhouse about 8:30 p. m. October 16, 1953, to attend a bean feed; that prior thereto he had been drinking beer in Hopkins; that he continued to drink beer after his arrival at the club. There is evidence that he left the clubhouse by taxicab at about 12:30 a. m. October 17, 1953, but returned almost immediately. The accident happened after he left the second time about 1 a. m. He had no recollection as to the details of his leaving the club, and no one saw the accident. He was found upon the ground about 13 feet from the bottom of the steps and was taken to the hospital immediately by members of the club.

Plaintiff's testimony as to the cause of the accident was conflicting and uncertain. He first testified that as he descended the steps he slipped upon leaves which he saw accumulated there. Later, he testified that he did not know upon what he had slipped. Then he stated he was told afterwards that there were lots of leaves around there. At still another time he testified that he remembered seeing leaves upon the top of the platform and slipped before reaching the first step. Later, he was asked how he slipped and replied that he did not know. Reference to the following excerpts from his cross-examination are illustrative of

this uncertainty:

"The Witness: *Well, I didn't know what they were.* They was there, must have been, I wouldn't have slipped on them, wouldn't have fell down.

\*    \*    \*    \*    \*

"The Witness: *I didn't know whether they was leaves or what they were.*

\*    \*    \*    \*    \*

"Q. \* \* \* When did you decide that there were leaves there?
"A.    Well, there was a lot of them around and *so I was told afterwards.*" (Italics supplied.)

"Q.    Now, how did you slip?
"A.    *That I don't know.*" (Italics supplied.)

There is substantial evidence that plaintiff was intoxicated at the time he fell, although he denied this. One member of the club testified that when plaintiff arrived at about 9 p. m. he had "a pretty good jag on." Others testified to seeing him consume at least three drinks of hard liquor during the evening. The bartender testified that the last time plaintiff came to the bar he was refused service because of his intoxicated condition; that he was sent to the kitchen so that he might eat something; that he had trouble handling his plate and that someone had to help him. There was evidence that plaintiff had won a turkey in a raffle held during the evening and that it had been necessary for someone to go through his pockets to find his winning ticket. There is evidence that a club member and the cab driver had been required to help him to his cab because of his intoxicated condition; that at the time he had held his head down and had kept mumbling to himself; that after he had entered the cab he had been incoherent and would not tell the driver where to deliver him and that the cab driver ultimately had returned him to the club; and that he had then been asked by a member why he had not gone home as he had promised and had replied that he would do so and had then turned around and left. Most of the witnesses who testified as to his intoxication were plaintiff's personal friends of long standing. Everyone questioned on this subject expressed the opinion that he was intoxicated.

At the trial, plaintiff could not remember any of the incidents which occurred at the club or anything in connection with the taxicab incident. All he could remember was that he had slipped and fallen on the leaves on the front steps and that he was not intoxicated.

The front steps upon which he fell were of ordinary concrete construction, and the dimensions of them, from the photographs submitted in evidence, appear adequate and safe. They were well lighted by three lights placed upon a small flagpole nearby. There was no evidence that either the steps or the top platform thereof as constructed were dangerous or defective. No one, other than plaintiff, using them on this occasion had fallen thereon.

■ Several well-established principles appear applicable here. Where evidence is contradictory and discredited to the extent that a verdict based thereon must be considered to be the result of conjecture and speculation, it should not be permitted to stand. Bakken v. Lewis, 223 Minn. 329, 26 N. W. (2d) 478; Spensley v. Oliver Iron Min. Co. 216 Minn. 451, 13 N. W. (2d) 425. The burden of establishing negligence rests with the plaintiff, and in the absence of a preponderance of proof, the plaintiff's case must fail. Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678. Where such evidence is wholly incredible in the light of the circumstances presented and otherwise is overcome by uncontradicted evidence, there remains nothing upon which a verdict may stand. Spensley v. Oliver Iron Min. Co. *supra.* Evidence which is so impossible, unreasonable, and inconsistent and so opposed by credible undisputed evidence as to be wholly incredible and unworthy of belief will not support a verdict. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243.

■ On the other hand, it does not follow that a jury must reject a party's testimony because of testimony apparently contradictory thereto elicited from him upon cross-examination. Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Sankiewicz v. Speckel, 209 Minn. 528, 296 N. W. 909. Ordinarily in negligence actions, where there is conflicting evidence or where the facts are in dispute or where there may be reasonable disagreement as to the inferences to be drawn from the facts, the right of the jury to determine such conflicts becomes absolute. Kolatz

v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

■ With these principles in mind, we find ourselves in accord with the trial court's conclusion that the evidence here is so contradictory and doubtful as to the cause of plaintiff's fall that the verdict based thereon should not be permitted to stand. While it is certain that plaintiff fell on the stairs, the cause of his fall is left to the realm of speculation and conjecture, and becomes even more doubtful when the positive testimony of many reliable and disinterested witnesses as to his intoxication is taken into consideration. Although part of plaintiff's testimony, standing alone, might justify the jury's verdict, it is apparent that, when all the evidence is considered as a whole, plaintiff's testimony is so overwhelmingly discredited that it becomes insufficient to support a verdict. Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372; Giermann v. St. Paul, M. & M. Ry. Co. 42 Minn. 5, 43 N. W. 483. The plaintiff's wavering and contradictory positions as to the presence of leaves upon the stairs lead to an inescapable conclusion that actually he does not know what caused his fall and compel this court to uphold the determination reached by the trial court on this issue.

■ In the absence of proof that the stairs were defective; or that they had been constructed or were maintained in such a way that they might be regarded as dangerous to tenants or others lawfully using them, there is no basis for a finding that defendants' failure to provide handrails might support a finding as to their negligence. The absence of a handrail on an ordinary stairway free of defects is not indicative of the failure of a landlord to exercise reasonable care. Vosbeck v. Lerdall, 245 Minn. 164, 169, 72 N. W. (2d) 371, 375; Walimaa v. Maki, 163 Minn. 352, 204 N. W. 25, 41 A. L. R. 965; Darrach v. Trustees of S. F. Medical Assn. 121 Cal. App. (2d) 362, 263 P. (2d) 469. A different rule prevails if there is a showing that a stairway is defective or that it has been constructed or is maintained in a way that might be regarded as dangerous for tenants or others properly using the same, Kidd v. Thomas Gilcrease Foundation (5 Cir.) 194 F. (2d) 129; White v. Herbst, 128 Conn. 659, 25 A. (2d) 68; Dexter v. Fisher, 256 App. Div. 738, 11 N. Y. S. (2d) 776, affirmed, 281 N. Y. 744, 23 N. E. (2d) 553; Coventry Leasehold Co. v. Welker, 43 Ohio

App. 82, 182 N. E. 688; see, Annotation, 25 A. L. R. (2d) 364, but as above indicated the failure to prove such conditions here ruled out the possibility of a finding of defendants' negligence on this basis.

Affirmed.