**CHAPTER 215, ASSOCIATED MASTER BARBERS AND BEAUTICIANS, et al., Appellants,**

v.

**Buster BROWN, Appellee.**

No. 15926.

Court of Civil Appeals of Texas.

Fort Worth.

June 20, 1958.

Rehearing Denied July 11, 1958.

J. Elwood Winters and Ernest May, Fort Worth, for appellant.

Doss Hardin, Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment denying injunctive relief against the operation of a barber shop on Sundays the petitioning plaintiffs appealed.

Judgment affirmed.

Petitioners for the equitable relief of injunction were Chapter 215, Associated Master Barbers and Beauticians, an unincorporated trade association of Fort Worth Texas, along with twenty-two registered barbers who do business in the community about and near the location where the respondent operates his barber shop.

Petitioners contend that their property rights of a pecuniary nature were and will be interefered with to their prejudice, in that as a result of respondent's operation

of his barber shop on Sundays (in violation of Vernon's Ann.P.C. Art. 286) in unfair competition with petitioners, he has secured the business of many persons of the community who consider ministration to their tonsorial necessities more convenient Sundays than on the other days of the week on which petitioners operate their barber shops.

In a trial before the court without intervention of a jury, evidence was introduced in support of a finding of fact which was made upon request by the judge of the trial court that "The plaintiffs have lost business. It is not possible to calculate how much of this business loss, if any, is due to the defendant's Sunday operation. But the Sunday service is a convenience which has, at times, attracted customers of the plaintiffs to the defendant's shop." In the judgment entered below it is stated, "After having heard all the testimony and argument of counsel, the Court is of the opinion that no property rights of plaintiffs' have been invaded by the defendant, and that an injunction cannot lie. * * *."

■■ It is established that in this state, in the absence of some special statutory authority therefor, that injunction will not issue to restrain the commission of a criminal act on the part of another where no property rights of the complainant are involved. It is outside the jurisdiction of a court of equity to enjoin the commission of crimes as a general proposition for a chancellor has no criminal jurisdiction.

■ However, if and in the event there be some interferences, actual or threatened, with property or rights of a pecuniary nature, jurisdiction of a court of equity does arise, not to be destroyed by the fact that they are accompanied by or are themselves violations of the criminal law.

So the questions to be determined in this case necessitate a determination in the first instance of whether the petitioners' property rights of a pecuniary nature are interfered with to their prejudice. If this question is to be answered in the negative, any inquiry is at an end for equity jurisdiction is not invoked and the judgment refusing the injunction applied for is the only proper judgment the lower court could have entered.

■ In our opinion the petitioners failed to establish the cause of action alleged in view of the fact findings made and recitation made in the judgment. We may not disregard the fact that the burden of proof lay with petitioners to establish their case, when their allegations would, if proved, entitle them to relief. Our initial impression is that petitioners lost their case on the facts.

■ Petitioners' single point of error is upon the judgment to the effect that "no property rights of plaintiffs have been invaded by the defendant * * *." They contend, but we cannot agree, that the undisputed evidence establishes the contrary. The most the evidence demonstrates is that since the respondent began to violate the law the income at neighboring shops has decreased. Some testimony from operators of neighboring shops was to the effect that their income was reduced approximately $20 per week. Though not allowed to state their opinions that such reduction occurred through respondent's Sunday operation, they were permitted to testify that they knew of no other cause for the decrease. There was testimony from one or more of the petitioners that they had seen certain of their regular customers in respondent's shop on Sundays, presumably to receive tonsorial services. Some hearsay testimony went into the record, which no doubt was disregarded, about what customers had told some of the petitioners in regard to obtaining a haircut in respondent's shop on Sundays.

Petitioners strongly rely upon the case of Featherstone v. Independent Service Station Ass'n of Texas, Tex.Civ.App.Dallas, 1928, 10 S.W.2d 124. The Supreme Court (in its opinion in the case of Board of Ins. Com'rs v. Title Ins. Ass'n of Texas, 1954,

153 Tex. 574, 272 S.W.2d 95) stated that it was of the opinion that such case was based upon sound reasoning. The case was one in which the appellate court reversed the trial court and upheld the right of a service station operator to maintain a suit enjoining a competitor from enticing away his customers through the use of a lottery. The basis of the opinion was that one transacting a legitimate business has a right to enjoin a competitor from transacting an unlawful business.

Adverting to the Court of Civil Appeals opinion in the case of Featherstone v. Independent Service Station Ass'n of Texas, supra, it is observed on page 125 of 10 S.W. 2d that the trial court made a fact finding to the effect that members of the respondent association had opened up places of business immediately surrounding that of the petitioner, at which they displayed advertisements to the effect that customers would receive chances on automobiles by patronizing their places. That various prospective customers of petitioner left his place without making purchases, on discovering that he did not distribute tickets for the automobile drawing, and that, since and during the operation of the scheme, petitioner's business declined, he lost money, whilst the respondents' business increased and they made money as the result of the scheme.

It may be seen from the fact finding of the trial court that in that case it was established in the evidence that the petitioner's property rights of a pecuniary nature were interfered with to their prejudice. The trial court made a contrary legal conclusion from the facts it had found, but the judgment based upon such conclusion was reversed by the appellate court.

In the instant case the fact findings of the court below are in no sense so extensive or definite. Furthermore, it is to be noticed that in the instant case the business done by the respondent was at a time when petitioners were not themselves open for business, a distinction to be made between this case and the lottery case referred to.

Though assuming that petitioners' case was established as a matter of fact, their attorney states in his brief that if the power of a court of equity to protect tradesmen against illegal competitive practice is truly defined in the case of York v. Yzaguairre, 1902, 31 Tex.Civ.App. 26, 71 S.W. 563, error refused, and in the case of Corchine v. Henderson, Tex.Civ.App.Dallas, 1934, 70 S. W.2d 766, he must concede that his clients are without any remedy.

The first of these cases, York v. Yzaguairre, was an instance where the respondent was keeping his barber shop open on Sundays, and petitioner, his competitor, was seeking to obtain injunctive relief which would prevent it. The decision of the court was in denial of the relief sought in view of the state of petitioner's pleading. The appellate court held that the petition for relief did not allege that petitioner's property rights had been invaded, but only that respondent's violation of the Sunday law gave him an advantage in business.

The second case, Corchine v. Henderson, involved competitive dealers in used automobile parts. Respondent kept open on Sundays in violation of the law. Petitioners did not keep their establishments open. They sought injunction against the respondent and a temporary injunction was granted upon the petition therefor. The appellate court reversed and rendered the judgment order so issued and held that even presuming the allegations to be true and according the petition the full force of the law, the petition fails to disclose a contingency, or a legislative grant, such as would have authorized the lower court to issue the injunction. The opinion recites that [70 S.W.2d 767] "The loss of alleged customers is the gravamen of appellees' contention, that their property rights have been invaded, on the speculative conclusion that, if appellant does not sell to them on Sunday, some of the appellees will sell to them on Monday, or some other day during the

week. The petition does not disclose the names of the customers or patrons who were diverted, the property which they would have purchased, or the amount of profits which appellees may have been deprived of by the acts of appellant. Thus, it is evident that appellees seek equitable relief for the violation of a criminal statute, on grounds of speculative injury to property rights, based on the loss of trade and patronage which they reasonably expect to reap in the future." Thereafter in the opinion it is stated: *"A dealer has no such interest in future trade as would justify an appeal to a court of equity to restrain a competitor from doing that which does not violate an existing right of such dealer."* (Emphasis ours.)

■ We are of the opinion that the holdings relative to the law in the case of Featherstone v. Independent Service Station Ass'n of Texas can be accommodated to those in the cases of York v. Yzaguairre and Corchine v. Henderson. In the latter cases, unlike the former, the lost trade about which petitioners necessarily complain is endowed with a characteristic which is not common to both petitioner and respondent, in that it was "captured" by the respondent at a time when it was not sought by petitioner. We agree that a dealer has no such interest in future trade as would justify an appeal to a court of equity to restrain a competitor from acquiring it, though the acquisition involves an unlawful business operation. The same rule would apply to a tradesman, including the operator of a barber shop.

The judgment is affirmed.

The student's attention is directed to cases annotated in 9 A.L.R. 925, supplemented in 36 A.L.R. 499, and to cases annotated in 52 A.L.R. 79. Of additional interest are the cases annotated in 20 A.L.R. 1114, et seq., on the majority and minority views upon the validity of Sunday-closing statutes, though this is no longer an open question in this state.