486

MILES-LEE AUTO SUPPLY CO., INC., ET AL., PLAINTIFFS, *v.* ARNOLD BELLOWS, D. B. A. FOREST CITY AUTO PARTS ET, DEFENDANTS.

Common Pleas Court, Cuyahoga County.

No. 791692.   Decided March 6, 1964.

*Mr. Harvey O. Yoder, Messrs. Burke, Haber & Berrick,* for plaintiffs.

*Mr. Marvin J. Feldman,* for defendant.

LYBARGER, J. This case comes before the court on the petition of the various plaintiffs seeking a restraining order, injunction, and other relief against defendant Forest City Auto Parts Company (hereinafter referred to as Forest City) for the reasons set forth below.

In the petition, the six plaintiffs allege in substance the following:

1. The defendant is an Ohio corporation engaged in selling auto parts, supplies and accessories; and the plaintiffs are business competitors of Forest City.

2. The plaintiffs themselves are now complying with the Sunday closing law (Section 3773.24, Revised Code), and Forest City has been and still is violating said statute.

3. Arnold Bellows, president of Forest City, was convicted

of violating the statute on April 9, 1963, and is presently appealing the decision.

4. The plaintiffs have invested money in their several enterprises, have built up valuable good will and have acquired numerous customers. They know of instances where customers "have taken their patronage to defendant's store because of the closing of their stores on Sunday," and "each and all of them are being damaged by this loss of their customers and their trade." (Petition paragraph 4.) The damages they have sustained individually and collectively to the present time amount to "many thousands of dollars in loss of sales and customers" (Paragraph 7), due to "the unfair and illegal acts of the defendant in keeping its place open on Sundays." (Paragraph 4.)

5. The plaintiffs have endeavored to seek redress by enforcement of the statute on Sunday closing, but they aver that the $25 "penalty is not sufficient to deter willful offenders since it is the equivalent of a low priced license to evade the law." Plaintiffs state "that the penalty for a second offense is of sufficient gravity to deter the breaking of this Sunday closing law" since it is "augmented by imprisonment" and would prevent evasion of the law. They say that protection by a criminal prosecution is "completely hopeless" since the city prosecutor has stated that "no second offense warrants . . . would be presented."

6. The plaintiffs allege that "every avenue under law has failed and their only hope for protection is in this Court of Chancery." (Paragraph 7.)

To the petition the defendant Forest City demurs on the grounds that (1) this court has no jurisdiction of the subject matter, and (2) the petition does not state facts which show a cause of action.

The office of a demurrer is to test whether or not a plaintiff is entitled to any relief, even if all of the factual allegations well pleaded in the petition are admitted, for the sake of argument, to be true. (*Life Insurance Co.* v. *Vesser*, 128 Ohio St., 200 (1934), Section 2309.08, Revised Code, makes it clear that only facts which appear on the face of the petition can be challenged by demurrer. In considering a demurrer the Court

cannot look beyond the petition, but must rely entirely upon the language used therein. (*Hauer* v. *Provident Savings Bank & Trust Co.*, 111 Ohio App., 214 [1959].) In the interest of justice a demurrer must be liberally construed in favor of the pleading under attack, and the Court must indulge every reasonable inference from the facts alleged (*Humphreys* v. *Wheeling Steel Corp.*, 132 Ohio St., 263 [1937]).

A demurrer, by the specific terms of the code, may challenge a petition for want of jurisdiction of either the person or the subject of the action, provided the lack of jurisdiction appears on the face of the petition. The law is the same if the petition fails to state facts which show a cause of action in favor of the plaintiff against the defendant. (Section 2309.08, Revised Code.) Also a demurrer may raise the question of the constitutionality of a law on which a claim in the petition is based. (See 71 A. L. R., 1194.)

It is obvious that the plaintiffs' cause of action in equity is grounded on alleged violation of the Sunday closing law by the defendant with resulting loss of customers and money by the several plaintiffs. At the outset it is important to examine the statute in question, for if it is unconstitutional as defendant contends, then the court lacks jurisdiction of the subject matter of the suit.

Ohio's Sunday closing law is found in Section 3773.24, Revised Code, which reads as follows:

Section 3773.24, Revised Code. *Transaction of business on Sunday; Exeptions.*

No person, firm, or corporation shall engage in common labor or suffer or permit a building or place to be open for transaction of business, or require a person in his employ or under his control to engage in common labor or to open a building or place for the transaction of business on Sunday. In prosecutions under this section complaints shall be made within ten days after a violation.

This section does not apply to work of necessity or charity, and does not extend to persons who conscientiously observe the seventh day of the week as the sabbath, and abstain thereon from doing things prohibited on Sunday.

This section shall not apply to:

(A) Traveling or the providing of services and commodities incidental thereto;

(B) Recreation, sports, amusements, entertainment, or exhibitions or the providing of services and commodities incidental thereto;

(C) Fairs held under the authority of the state or a political subdivision, or independent fairs, or the providing of services and commodities incidental thereto;

(D) The operation of publicly owned places of entertainment, recreation, or education, by a public officer, concessionaire, exhibitor, or employees of all or any of them, or any other person, or the providing of services and commodities incidental thereto.

The defendant contends that the statute violates the First and Fourteenth Amendments of the Constitution of the United States and Article I, Section 7 of the Constitution of Ohio. Ohio's Constitution says that ''. . . No preference shall be given by law to any religious society.'' Defendant contends that Section 3773.24, Revised Code, gives preferment and makes it possible to invoke a religious test as an affirmative defense to the statute. It casts upon a court the burden of determining what religious belief a defendant has and whether he ''conscientiously'' observes it.

Defendant calls attention to the decision of the United States Supreme Court in *Braunfield* v. *Brown*, 366 U. S., 599 (1961), wherein the court rejected a contention that a Pennsylvania law should make an exception for persons who, because of religious conviction, observe a day of rest other than Sunday, saying on page 608:

''Additional problems might also be presented by a regulation of this sort. To allow only people who rest on a day other than Sunday to keep their businesses open on that day might well provide these people with an economic advantage over their competitors who must remain closed on that day, this might cause the Sunday-observers to complain that their religions are being discriminated against. With this competitive advantage existing, there would well be the temptation for some, in order to keep their businesses open on Sunday, to assert that they have religious convictions which compel them to close

their businesses on what had formerly been their least profitable day. This might make necessary a state-conducted inquiry into the sincerity of the individual's religious beliefs, a practice which a state might believe would itself run afoul of the spirit of constitutionally protected religious guarantees."

It should be noted that Section 3773.24, Revised Code, as it now reads became effective July 17, 1959. The statute as it was prior thereto contained the same clause as to persons observing the seventh day of the week as the sabbath. For a comparison of the two forms of the statute, see *City of Euclid* v. *MacGinness* (1962), 179 N. E. (2d), 131.

In 1958 the Supreme Court of Ohio upheld the constitutionality of the Sunday closing law in the case of *State* v. *Kidd*, 167 Ohio St., 521. On page 525 Judge Zimmerman takes note of the provision in the law as to persons conscientiously observing the seventh day as the sabbath. Syllabus 1 says:

Section 3773.24, Revised Code, commonly called the Sunday closing law, is a valid, constitutional and enforceable enactment and is not vulnerable to the attack that it is a measure for the enforcement or promulgation of religious observances."

In *State* v. *Woodville Appliance, Inc.*, 13 Ohio Opinions (2d), 46 (1960), Judge Carpenter of the Lucas County Court in an able and exhaustive decision, held that Section 3773.24, Revised Code, is unconstitutional and void because the provisions of the statute are "1. arbitrary and capricious and unreasonable, 2. unreasonable classifications, 3. grant special privileges to a few, 4. vague, 5. contrary to constitutional provisions and Bill of Rights." The decision makes the point that when the Supreme Court of Ohio decided the *Kidd case, supra*, it did not have before it the supplementary sections A, B, C, and D of the statute as amended in 1959.

The Supreme Court of Ohio had the opportunity during 1960 and 1961 to hear several cases directly involving the question of constitutionality of the present Sunday closing law. In two instances it refused to grant appeals from different appellate courts which upheld the constitutionality of Section 3773.24, Revised Code, *State* v. *Broughton*, 171 Ohio St., 261 and *State* v. *Weisberg*, 171 Ohio St., 302. Both dismissals were made during the year 1960. See also *State* v. *Family Fair*, 171 Ohio St., 322, and *State* v. *Gaint Tiger*, 171 Ohio St., 294.

In May, 1961, the United States Supreme Court decided the leading case of *McGowan* v. *Maryland*, 366 U. S., 420, and several similar cases in which the court upheld Sunday closing statutes in Maryland, Pennsylvania and Massachusetts. Included in the 8 to 1 decision was a concurring opinion by Justice Frankfurter which exhaustively reviewed all such statutes now in effect in the United States as well as elsewhere. In both the majority and the concurring opinion the argument was raised that since the statutes in question did not contain exemptions for those who observe some day other than Sunday as a day of rest (i. e., as the sabbath), they operated as an undue and harsh infringement on the free exercise of religion by those so acting. This argument was rejected.

The defendant points to the closing paragraph of *McGowan* which says:

"We do not hold that Sunday legislation may not be a violation of the 'Establishment' clause if it can be demonstrated that its purpose—evidenced either on the face of the legislation, in conjunction with the legislative history, or in its operative effect—is to use the state's coercive power to aid religion."

Defendant's conclusion is that Ohio's statute promotes religion in making exemptions and would be held unconstitutional in the light of *McGowan* v. *Maryland*.

In February, 1963, in *State* v. *Grimes*, 23 Ohio Opinions (2d), 96, Judge Carpenter of the Lucas County Court again ruled that Section 3773.24, Revised Code, was unconstitutional in that it violated Art. I, Sections 1, 2 and 7 of the Constitution of Ohio and the First and Fourteenth Amendments of the Constitution of the United States. The opinion is well reasoned and commends itself to thoughtful consideration, just as does the dissenting opinion of Justice Douglas in *McGowan*, *supra*, which Judge Carpenter mentioned.

However critical of obvious inconsistencies and doubtful distinctions in Ohio's Sunday closing law the court may be, it cannot go so far as to hold the statute unconstitutional. Thus far the Supreme Court of Ohio has upheld the law. Whether the Supreme Court has considered every facet of Section 3773.24, Revised Code, is not clear. The *Boughton* and *Weisberg cases, supra,* were appealed to the United States Supreme

Court after *McGowan* had been decided. In both instances certiorari was denied. (367 U. S., 905, 11.) The problem of dealing intelligently and fairly with the Sunday closing law is one which should be undertaken by the legislature at the earliest opportunity. In the absence of any constitutional violation it cannot be solved by the courts. In the light of the present decisions of the appellate courts, it is impossible for a court of first impression to say that Section 3773.24, Revised Code, is unconstitutional on the ground of violating the free exercise and establishment of religious protections or because of vagueness or lack of uniformity in application.

The nature of plaintiffs' cause of action is governed by the allegations contained in the petition itself. The petition purports to state one cause of action, and that is in equity. Its purpose is to enjoin the defendant corporation from keeping its store open on Sunday.

It has been widely recognized that "equity ordinarily will not interfere by injunction merely to prevent commission of a crime," and this has been applied in "the cases in which an attempt was made to enjoin acts amounting to violation of Sunday laws." (See: 76 A. L. R. [2d], 875.)

One of the latest pronouncements of the Supreme Court of Ohio on the subject is in *State, ex rel. Chalfin,* v. *Glick,* 172 Ohio St., 249 (1961), as follows:

"1. Injunction is not the proper remedy to compel obedience to the criminal or penal laws of the state.

"2. Except where there is express statutory authority, acts or omissions will not be enjoined on the grounds that they constitute violation of the laws and are punishable as crimes. The possibility that many persons will violate the law and that many suits will be required to enforce it does not warrant relief by injunction."

It is the law, however, that "relief by way of injunction should not be denied merely because the acts complained of are in violation of the Sunday laws, if independent grounds of equitable relief are shown, as where the acts complained of constitute a nuisance, or involve injury to property or other rights . . ." (76 A. L. R. [2d], 875.) It follows that as a prerequisite to a cause of action a plaintiff must allege that he has suffered some special injury, some direct and personal injury beyond

an invasion of his general interest as a member of the public in having the Sunday closing law enforced. *Renner Brewing Co.* v. *Rolland,* 96 Ohio St., 432 (1917) ; *Vidmar* v. *Fretti,* 95 Ohio App., 7 (1952).

In the instant case the plaintiffs allege that they individually have been damaged by loss of money from sales and loss of bona fide customers from 1961 to the present time "due to the unfair and illegal acts of the defendant in keeping his place of business open on Sundays . . ." and that "this loss is continuing from week to week . . . until the defendant is restrained." (Paragraph 4 and 7.)

The defendant challenges the sufficiency of the allegations and says they do not indicate such violation of property rights as to warrant injunctive relief.

In *Beck* v. *American Service Co. Inc.,* 319 S. W. (2d), 76 (Tenn., 1958), the complainants were grocers who remained closed on Sundays and sought to enjoin the defendant, a competitor, from staying open in violation of the Sunday closing law. The court sustained a demurrer on the ground that the complainants could not have an injunction on the allegation that they would "suffer special damages on account of *anticipated* profits."

In the case of *Chapter 215, Associated Master Barbers, etc.* v. *Brown,* 315 S. W. (2d), 17 (Texas, 1958), the petitioners asked to enjoin a barber from violating the Sunday closing law, alleging that their property rights of a pecuniary nature had been and would be interfered with, and they had lost business due to defendant's unfair competition. The court held that "no property rights of the plaintiffs have been invaded by the defendant." Syllabus 6 reads:

"A dealer has no such interest in *future* trade as would justify appeal to a court of equity to restrain a competitor from acquiring it, though the acquisition involves an unlawful business operation . . ." (Emphasis added.)

In *Corchine* v. *Henderson,* 70 S. W. (2d), 767 (Texas, 1934), the petitioners were dealers in automobile parts who brought action to enjoin the defendant in the same kind of business from keeping open Sundays. The appellate court dissolved a temporary injunction granted below and held that the petition did not state a cause of action. The court said in part:

". . . the design is to restrain the violation of a penal statute, because such infraction of law is supposed to give the violator some advantage over appellees in their businesses. The loss of alleged customers is the gravamen of appellees' contention that their property rights have been invaded, on the speculative conclusion that, if appellant does not sell to them on Sunday, some of the appellees will sell to them on Monday, or some other day during the week.

"* * *

"A dealer has no such interest in the future trade as would justify an appeal to a court of equity to restrain a competitor from doing that which does not violate an existing right to such dealer.

"* * *

"A court of equity cannot exercise its power to care for and protect customers and patrons, and direct their course in dealing with business affairs, and to hold their trade for the convenience of sellers of merchandise—*no such property right exists in customers and patrons.*" (Emphasis added.)

In Ohio the case of *Merz* v. *Murchison,* 30 O. D. C., 646 (1908), was an effort by a physician to enjoin another from practicing medicine in violation of the licensing law on the ground of interference with plaintiff's property right by the unlawful competition of a person unlicensed. The Circuit Court quoted *High on Injunction* with approval, to the effect that "an injunction will be withheld against the perpetration of an act prohibited by statute, the only ground urged for the relief being the diminution of the profits of a trade or business pursued by complainant in common with others." In refusing relief the court relied on *York* v. *Yzaguairre,* 71 S. W., 563 (Texas, 1902).

The Court in the *York case* said that no right of property had been invaded even though plaintiff alleged that the defendant, against whom he sought an injunction to compel him to close his barber shop on Sundays, was engaged in unlawful and unfair competition to the plaintiff's irreparable injury. Here no other loss than that of customers was alleged.

There is considerable conflict in the cases as to whether a person lawfully occupied in a particular business may bring an

action for an injunction against a competitor who is alleged to be violating the law. See the annotation in 90 A. L. R. (2d), 17.

In the opinion of the court if the plaintiff's petition were based merely on a loss of customers it would not state a cause of action. Customers are here today and gone tomorrow, and the reasons for their changing their patronage from one place to another are too nebulous to permit anyone to acquire a so-called property right in them. However, a careful reading of the petition in the instant case indicates that it is grounded on allegations of definite loss of sales as well as customers from June 25, 1961, to the present, amounting "to many thousands of dollars."

It is not for the court at this time to question the quantum of evidence that may go to back up this allegation. Construing this most favorably on demurrer, the court must hold it to be an allegation of loss of a property right. The court is of the opinion, therefore, that plaintiffs have alleged such special injury as to give their petition initial standing in equity provided that otherwise it is not subject to any patent shortcomings.

The court must not overlook the fact that an injunction is an extraordinary remedial process which is granted not as a matter of right, but in the exercise of sound judicial discretion. An early Ohio case said: "The cases which justify the interference of a court of chancery should be those of clear, incontestable, well-defined right." *Walker* v. *R. R. Co.*, 8 Ohio, 39 (1837). Injunction is a writ that is not regarded with judicial favor, and it is used only with caution in cases of great necessity. See: 14 R. C. L., 317; 29 Ohio Jurisprudence (2d), Injunctions, Section 15, 16, pages 179-80.

It goes without saying that before a plaintiff can seek relief in equity his petition must allege facts that indicate he has exhausted his remedies at law. In the opinion of the court this rule should be strictly followed, especially where one is seeking to enforce a criminal statute by means of an injunction, a process not looked upon with favor by the courts. As the Supreme Court said in *State, ex rel. Chalfin,* v. *Glick, supra,* "A court of equity is in no sense a court of criminal jurisdiction . . . To grant relator's request might result in the imposition upon re-

spondents of penalties much more severe than those provided by statute for this crime." If, therefore, the plaintiffs have a legal means of ending defendant's alleged violation of the Sunday closing law they need to state that they have availed themselves of it.

The plaintiffs recognize in their petition that they must meet this issue. In fact in a part of paragraph 6 of their pleading they make this interesting allegation:

"Plaintiffs moreover state that they have gathered from their respective legal counsels that the penalty under Ohio Statutes for first offenders of the Sunday closing law is a fine of $25.00. Plaintiffs aver that said penalty is not sufficient to detract willful offenders since it is the equivalent of a low priced license to evade the law. They are moreover informed that the penalty for a second offense is of sufficient gravity to deter the breaking of this Sunday closing law with impunity, for the larger amount of the fine in money in said second offense is augmented by imprisonment for a term of days and it is their consensus that *this provision of the statutes would prevent the evasion of this Sunday* closing law." (Emphasis added.)

Thus the plaintiffs acknowledge that a second conviction of the defendant or its president would accomplish the result they seek in this action in equity.

Now apparently no legal effort has been made to charge the defendant or its president with a second Sunday violation, although plaintiffs state that the violations continue. They also make the following allegation in paragraph 6 of the petition:

"Plaintiffs state that they have been notified within recent weeks that their hope of further protection by an action at law in their municipality was completely hopeless since a statement was made to their counsel by the Honorable Richard F. Matia, Chief Prosecutor of the Criminal Branch of the Municipal Court of Cleveland that no second offense warrants under the Sunday closing statutes, namely Section 3773.24, Revised Code, would be prosecuted by his department and that since that announcement by said prosecutor, no second offense Sunday closing warrants have been served or prosecuted."

Do the foregoing statements indicate that presently plain-

tiffs are without any recourse in law and therefore are entitled to resort to equity to enforce 3773.24, Revised Code?

Ohio provides a remedial process which is available under certain conditions to compel a public official to discharge a duty required of him by law. Section 2731.02, Revised Code reads:

"The writ of mandamus may be allowed by the Supreme Court, the Court of Appeals, or the Court of Common Pleas and shall be issued by the clerk of the court in which the application is made. Such writ may issue on the information of the party beneficially interested."

Upon the broad general principle of equity jurisprudence that where there is a remedy at law which is full and adequate courts of equity will not exercise jurisdiction, it is settled by practically all cases, with few exceptions, that a remedy by mandamus being available, a suit for injunction may not be maintained. (See: 93 A. L. R., 1495.) The mere allegation of irreparable injury and hardship do not in any wise change this rule. *Film Classics* v. *Dever*, 234 Ill. App., 614 (1924).

In order to bring an action in mandamus a private citizen "must have a beneficial interest in the act sought to be compelled." *State, ex rel.,* v. *Miller,* 164 Ohio St., 163 (1955). In *State, ex rel.,* v. *Henderson,* 38 Ohio St., 644 (1883), the court said:

". . . where the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject matter, since he is regarded as the real party in interest and his rights must clearly appear."

The *Miller case, supra,* was one that arose in this county and was passed on by the Court of Appeals, whose decision of it was sustained by the Supreme Court. In that case a citizen who had no special or property interest in the matter, or no legal right affected by the failure of a public official to act, was held not to have a beneficial interest such as would permit him to maintain an action in mandamus to compel issuance of a warrant for the arrest of one accused of violating the Sunday closing law.

Such, however, is not the fact in the instant case. Here the petition of the plaintiffs sets them apart from the general public. They have alleged injury different than that of others. They state in effect that they have a private or special interest

to be subserved, a particular right to be pursued or protected, independent of that which they hold with the public at large. The *Miller case* clearly indicates that upon statement of facts of this nature an action for a writ of mandamus will lie.

Under the state of the allegations in the plaintiffs' petition in this case, the court is of the opinion that the plaintiffs have a clear right to seek a writ of mandamus to compel issuance of a warrant for a second offense if the defendant or its president have again violated the Sunday closing law. The plaintiffs themselves recognize that should conviction of defendant on a second offense follow, it would afford them adequate relief, since it "would prevent the evasion of this Sunday closing law," and that is just what they are seeking in this suit. On the other hand, should defendant be found not guilty the plaintiffs would not be entitled to any relief either in law or equity.

The protection of alleged property rights is an important function of a court of equity. But equity has always been reluctant to enforce the criminal laws except as a last resort and then after the petitioner has exhausted all his legal remedies. There must be a balancing of rights. When equity is called on to enforce its decree involving a criminal statute it deprives a party of the right to a trial by jury and may subject him to a greater sentence than provided for the violation in the criminal statute. Here the human right of a violator to a trial by his peers is of far more ancient origin than, and certainly of as great importance as equity's enjoining a crime or misdemeanor on behalf of property rights, which is a comparatively modern development of equity practice.

The Court suggests that the plaintiffs have one further legal remedy which could well serve to bring the defendant to time. If plaintiffs have suffered loss of income and profits by reason of defendant's conduct since 1961, as they allege, they may file an action for money only. Thus to strike at the cash register might well prove to be the most effective weapon available to them.

The Court has found no case in Ohio where relief has been granted under the circumstances narrated in plaintiffs' petition. Equity should enter this field only with the greatest caution and reluctance. The Court is convinced that the pleading

reveals that plaintiffs have not exhausted their remedies at law and that they have adequate relief available before resorting to equity. For these reasons the Court sustains the demurrer and enters judgment for the defendant.