PIONEER OIL COMPANY et al., Appellants,

v.

RAY E. McNUTT OIL COMPANY, INC.,
Appellee.

No. 6311.

Court of Civil Appeals of Texas,
El Paso.

May 16, 1973.

Rehearing Denied June 27, 1973.

Herman I. Morris, Fort Worth, Edward C. Hughes, El Paso, for appellants.

Grambling, Mounce, Deffebach, Sims, Hardie & Galatzan, William B. Hardie, Malcolm Harris, El Paso, for appellee.

## OPINION

RAMSEY, Chief Justice.

This is an appeal from a temporary injunction. Ray E. McNutt Oil Company, Inc., Plaintiff-Appellee, brought suit against Pioneer Oil Company, et al., Defendants-Appellants, for temporary and permanent injunctive relief. The trial Court entered its temporary injunction and the Defendants have appealed. Reversed and temporary injunction dissolved.

The record reflects that the Plaintiff, together with some seven other station owners who either operate or furnish petroleum products to approximately 120 stations in El Paso, agreed to institute the injunctive proceedings against the Defendants who were operating a self-service station. The action was filed in the name of the Plaintiff only, though the other interested parties were contributing to the cost of the litigation on a prearranged percentage basis. The Plaintiff owned and operated a full service station one-half mile from Defendants' station. The Plaintiff complains that by reason of the Defendants' illegal operations, the Defendants were able to sell their products at a lower price, and thereby entice Plaintiff's customers to Defendants' station. Plaintiff thus alleges it is damaged by the loss of customers, gasoline sales and profits.

The hearing before the Court commenced on September 14, 1972, and continued through September 15, 1972, at which initial hearing, some 277 pages of testimony were heard. At that time, the Court denied the temporary injunction. On September 18, 1972, the Court entered an order setting aside its oral order of September 15, 1972, and re-set the hearing for October 12, 1972. At the second hearing, some additional 339 pages of testimony were introduced. At the conclusion of the second hearing, the Court entered a temporary injunction as prayed for by the Plaintiff.

The injunction temporarily enjoined the Defendants from operating the station unless:

(1) There is at least one qualified attendant on duty; and,

(2) The attendant's primary function shall be to observe and control the dispensing of the liquid products while they are being dispensed; and,

(3) The attendant prevents the dispensing of liquids in improper containers; and,

(4) The attendant controls the sources of ignition; and,

(5) The attendant immediately handles accidental spills and fire extinguishers, if needed.

The provisions of the injunction are based on alleged violations of Article 1111c–1, Vernon's Ann.Texas Penal Code, and the rules promulgated by the State Board of Insurance as authorized under the Act. The trial Court concluded in its judgment that the Defendants operated their service station in violation of Rules 4050 and 4261 of Chapter IV of the Rules and Regulations of the State Board of Insurance which constituted an illegal operation and therefore unfair competition against the Plaintiff.

The Defendants assign as error the granting of the temporary injunction on the basis of unfair competition by asserting that there is no relationship between the alleged illegal operation and the alleged injury.

The Plaintiff asserts its right to injunctive relief on the reasoning in Featherstone v. Independent Service Station Ass'n of Texas (lottery), Tex.Civ.App., 10 S.W.2d 124 (n. w. h.) ; McCloskey v. San Antonio Public Service Co. (barratry), Tex.Civ. App., 51 S.W.2d 1088 (writ ref'd) ; and Southern Traffic Bureau v. Thompson (barratry), Tex.Civ.App., 232 S.W.2d 742 (ref'd n. r. e.).

In reviewing the entire statement of facts, it becomes apparent that the basic complaint against the Defendants stems from Plaintiff's accusations that Defendants' station is operated by either inadequate personnel and/or unqualified personnel whereby the station operator cannot or does not perform the services of an attendant as were specifically set forth in the trial Court's judgment.

Plaintiff introduced evidence to the trial Court to demonstrate its allegations. Plaintiff through its representatives and employees obtained a gallon of milk from a grocery store, disposed of its contents, and gave the empty plasticized carton to Plaintiff's station manager. The manager, with Plaintiff's knowledge, had borrowed a panel truck from his brother of sufficient height to hide behind and drove into Defendants' station where his presence on one side would be obscured from the attendant's view. Plaintiff secured the services of a photographer who was stationed behind some bushes some two hundred feet from the station to photograph the events. The manager testified that he pulled into the Defendants' station, got out of the truck where the attendant could not see him, partially filled the milk carton with gasoline, lit a cigarette, made a complete circle of the vehicle, then put the cigarette out and proceeded to fill the panel truck with gasoline. During this operation, the attendant did not come out of the station. The testimony of the manager was substantiated by the film. This graphically demonstrated to the Court that the station attendant did not supervise the dispensing of the gasoline; that the attendant did not control sources of ignition; and that the attendant did not prevent the sale of gasoline in an improper container. Other testimony was introduced by the fire marshal to the effect that a female patron spilled approximately one-half pint of gasoline while filling her car which was not immediately attended and that the attendant, being on the inside of the premises, could not immediately use a fire extinguisher, if necessary. The trial Court had before it evidence and testimony of each and every alleged violation.

Each of the violations complained of are prohibited in Rules 4050 and 4261 of Chapter IV of the Rules and Regulations of the State Board of Insurance. It should be noted that Article 1111c–1 of the Penal Code specifically permits self-service gasoline stations so long as such stations have an "attendant on the premises." The Rules and Regulations of the State Board of Insurance (4261 of Chap. IV) enlarge upon this requirement in the following language:

". . . provided there is at least one *qualified* attendant on duty while the station is open to the public for retail sales. The attendant's primary function shall be to supervise, observe and control the dispensing of Class I liquids while said liquids are being dispensed. It shall be the responsibility of the attendant to prevent the dispensing of Class I liquids into portable containers not in compliance with 4050, control sources of ignition, and to immediately handle accidental spills and fire extinguishers if needed." (Emphasis added).

Rule 4050 of Chap. IV of such rules requires any container to be of metal with proper closure and spout. Clearly, the trial Court had before it instances of operation

of the Defendants' station as prohibited by the Rules of the State Board of Insurance. Art. 1111c–1 of the Penal Code in its enforcement provision, Sec. 3, provides that the rules and regulations shall be enforced by the State, County and City fire marshals. This may be accomplished by criminal penalties, civil penalties and injunctions as provided by the statute.

■ Ordinarily, equity does not concern itself with the criminal law. However, as stated in Featherstone v. Independent Service Station Ass'n of Texas, supra, when necessary to protect civil or property rights, equity will intervene. It should be noted, however, that the basis for the Court's decision in Featherstone, supra, is stated on page 128 of 10 S.W.2d:

"That plaintiff's business, in the case at bar, was interfered with and injured, as a direct result of the operation of the lottery scheme conducted by defendants, is shown by the undisputed facts and the unchallenged findings of the trial court."

The Supreme Court in Board of Ins. Com'rs v. Title Ins. Ass'n of Texas, 153 Tex. 574, 272 S.W.2d 95 (1954), commended the reasoning of Featherstone, supra, by stating on page 98 that:

"In that case the court upheld the right of a service station operator to maintain a suit enjoining a competitor from enticing away his customers through the use of a lottery."

Plaintiff testified as to a loss in gallonage sales of gasoline after the Defendants opened their station. Plaintiff estimated reduced sales amounting to approximately 9,000 gallons per month. This, the Plaintiff attributed to the existence of Defendants' station. When questioned by Defendants' counsel as to his opinion as to the reason, plaintiff testified that the cause of the decrease was due to the operation of Defendants' station and to the price of Defendants' gasoline. When asked if the loss was more attributable to the method of operation or to the price, the Plaintiff answered that in this case it was the price. In another area of Plaintiff's operation another self-service station had operated by a different owner and in order to meet that competition, the Plaintiff testified that he lowered the price of his gasoline. When interrogated as to why he did not do the same thing in this instance, the Plaintiff testified that he would lose more money by lowering his price per gallon than he suffers by the lost sales. The same problem has arisen in other cases involving the issuance of injunctive relief relating to criminal violations as unfair trade practices. Corchine v. Henderson, Tex.Civ. App., 70 S.W.2d 766 (n. w. h.), involves selling used auto parts on Sunday. York v. Yzaguairre, 31 Tex.Civ.App. 26, 71 S. W. 563 (writ ref'd), is concerned with operating a barbershop on Sunday. In Chapter 215, Associated Master Barbers and Beauticians v. Brown, Tex.Civ.App., 315 S.W.2d 17 (ref'd n. r. e.), which involved operating on Sunday, the Court distinguishes these three cases from Featherstone, supra, on the basis that the "captured" trade occurred at a time when the complaining merchant was not seeking it and that there could be no property interest in future trade of which a Court of equity would enjoin a competitor from acquiring.

■ In a hearing on an application for temporary injunction, the only question is the right of the applicant to maintain the status quo pending final determination. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury. . Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549 (1953). The question of probable right, consistent with Featherstone v. Independent Service Station Ass'n of Texas, supra, and Board of Ins. Com'rs v. Title Ins. Ass'n of Texas, supra, is whether or not the Plaintiff's business was directly interfered with by the illegal act. It would be unrealistic to reason that the furnishing of an inferior service would entice customers to a competitor. It is more consistent with human experience, and in

accord with Plaintiff's own testimony, to conclude that the Defendants' business flourished as a result of a lower price. The injury is the loss of sales. Customers were not lured away by the illegal acts—unlike the lottery in Featherstone, supra. It cannot be argued that the customers went to the Defendants' station because of the illegal acts. We hold in this case that Plaintiff's business was not directly interfered with by the illegal acts; and thus, there is no probable right. Having so held, the question of probable injury is immaterial.

We hold that the temporary injunction should not have been granted and the judgment of the trial Court is reversed and the temporary injunction is hereby dissolved.

## ON MOTION FOR REHEARING

RAMSEY, Chief Justice.

The Plaintiff in its motion for rehearing complains of this Court's opinion stating that the opinion, as written, too prominently implies that there was a price fixing scheme underlying the suit and that the Court's opinion should be corrected to remove any implication of unlawful conspiracy. Plaintiff asserts that; (1) There was no meeting of the other operators prior to the institution of the suit; and, (2) The suit was well on its way when the other operators contributed to the expense, and therefore there was no evidence of any "prearranged percentage basis."

The record reflects that the original petition in this case was filed on June 23, 1972. Plaintiff testified that the first meeting of the operators was held in March, which was prior to the institution of the suit.

A second meeting was held in July. The record does not disclose, however, at what point in time the percentage participation was agreed on, therefore, the use of the words "a prearranged percentage basis"

would appear inappropriate, and such wording should be changed to "an agreed percentage basis".

With this correction, the Motion for Rehearing is overruled.